UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VILLAGE OF NYACK, NEW YORK,

Plaintiff,

-against-

PROFESSIONAL DISPOSABLES, INC., et al.,

Defendants.

**OPINION AND ORDER**

25-CV-01409 (PMH)

PHILIP M. HALPERN, United States District Judge:

Village of Nyack, New York ("Plaintiff") commenced this environmental remediation recovery action bringing federal claims under provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, along with state law tort-based claims, including claims for continuing public nuisance, continuing trespass, negligence, and failure to warn. (*See* Doc. 137, "TAC").

Defendants Professional Disposables, Inc. ("PDI"), Professional Disposables International, Inc. ("PDI International," and together with PDI, "PDI Defendants"), Safety-Kleen Systems, Inc. ("Safety-Kleen"), Clean Harbors, Inc. ("Clean Harbors," and together with Safety-Kleen, "CH Defendants"), Chartwell Star Rx LLC ("Chartwell"), Cerovene, Inc. ("Cerovene"), Nice-Pak Products, Inc. ("Nice-Pak"), Intercos America, Inc. ("Intercos"), Plastic-Craft Products Corp. ("Plastic-Craft"), and Tilcon New York Inc. ("Tilcon," and collectively, the "Moving Defendants"), move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted against them. (Doc. 179; Doc. 183; Doc. 184).[1] Moving Defendants, as directed by the Court (Doc.

[1] Defendants Miele Sanitation Co. NY Inc. and United Structural Works, Inc. have not appeared in this action to date. Defendant M Zone Property LLC filed an Answer with Crossclaims on September 11, 2025 (Doc. 141), and a Third Party Complaint on September 18, 2025 (Doc. 145), neither of which bear on the Moving Defendants' motion at issue herein.

167), filed an omnibus moving brief and reply brief in support of the motion (Doc. 181, "Def. Br."; Doc. 185, "Reply"), and as further permitted, each of the Moving Defendants' counsel filed affidavits containing argument as to each of their respective clients' positions (Doc. 180, "CH Defs. Decl."; Doc. 182, "Nice-Pak Decl."; Doc. 186, "Chartwell Decl."; Doc. 187, "Tilcon Decl."; Doc. 188, "Intercos Decl."; Doc. 189,[2] 201, "Cerovene Decl."; Doc. 190, "Plastic-Craft Decl."; Doc. 191, "PDI Defs. Decl."). Plaintiff, as directed by the Court, filed an omnibus brief in opposition to Defendants' motion (Doc. 192, "Pl. Br."), along with responses to each of Moving Defendants' respective affidavits (Doc. 193, "Pl. Cerovene Decl."; Doc. 194, "Pl. Tilcon Decl."; Doc. 195, "Pl. Intercos Decl."; Doc. 196, "Pl. CH Defs. Decl."; Doc. 197, "Pl. PDI Defs. Decl."; Doc. 198, "Pl. Plasti-Craft Decl."; Doc. 199, "Pl. Nice-Pak Decl."; Doc. 200, "Pl. Chartwell Decl.").[3]

For the reasons set forth below, Moving Defendants' motion to dismiss is DENIED.

## BACKGROUND

The Court, for purposes of deciding the pending motion, accepts as true the well-pled factual allegations in the TAC and draws all reasonable inferences in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

---

[2] Cerovene appears to have mistakenly filed its declaration twice, once as a "Motion to Dismiss Plaintiff's Complaint" (Doc. 189), and again, properly, as an "Affidavit" of counsel (Doc. 201). Accordingly, the Court considers Doc. 201 as Cerovene's declaration.

[3] Moving Defendants, on April 13, 2026, filed a "Notice of Supplemental Authority" (*see* Doc. 204), to which Plaintiff responded on April 15, 2026 (*see* Doc. 205). The Court considers the "supplemental authority," as well as each of the Parties' respective letters, to the extent consistent with their papers.

The Village of Nyack's Public Water Supply

Plaintiff, a New York political subdivision, manages, owns, and operates a public water system supplying "approximately 15,000 residential, commercial, and industrial customers in the Village of Nyack, New York in Rockland County, as well as portions of Clarkstown, Central Nyack, and West Nyack." (TAC ¶¶ 1, 56-57). Plaintiff owns and operates the water treatment plant associated with the public water system. It also established the Village of Nyack Water Department, which utilizes the Hackensack River as its "sole source of water," located approximately one mile south of Lake DeForest Reservoir ("Plaintiff's Water Supply"). (*Id.* ¶¶ 2, 36-37, 58). Plaintiff claims that the "source water protection area" for the Village of Nyack's drinking water system extends to the "watershed boundary for Lake DeForest Reservoir and the Hackensack River." (*Id.* ¶¶ 37-39). Additionally, Plaintiff operates a Municipal Separate Stormwater System ("MS4") which contains a "system of stormwater conveyances, including drainage systems, ditches, and storm drains" that drain and reach Plaintiff's Water Supply. (*Id.* ¶¶ 40-41). Plaintiff operates its MS4 under a New York State Department of Environmental Conservation State Pollutant Discharge Elimination System ("SPDES") General Permit. (*Id.* ¶ 40).

PFAS Contamination

Plaintiff, between 2020 and 2023, has detected elevated levels of synthetic per- and polyfluoroalkyl substances ("PFAS"), in its drinking water above the Environmental Protection Agency's ("EPA") "promulgated drinking water standard . . . of 4.0 [parts per trillion]." (*Id.* ¶¶ 42-43). Specifically, Plaintiff detected the following PFAS chemicals in its drinking water supply: perfluorooctanoic acid ("PFOA"); perfluorooctane sulfonic acid ("PFOS"); perfluoroheptanoic acid ("PFHpA"); and perfluorohexanoic acid ("PFHxA"). (*Id.* ¶¶ 25-30, 42). PFAS, generally, are man-made manufactured chemical compounds identified as "forever chemicals," due to their

containing excessively strong carbon-fluorine bonds that, as a result of such characteristic, can bioaccumulate and cause "extensive and long-lasting environmental contamination and long-term health effects to those exposed to PFAS through drinking water." (*Id.* ¶¶ 15-20). PFAS, in addition to its persistence in the environment and human body, are also water soluble, meaning they can "spread easily once released into the environment." (*Id.* ¶¶ 21-24).

The EPA is actively monitoring PFAS under the Safe Drinking Water Act, including PFOS, PFOA, PFHpA, and PFHxA, and has concluded that PFOS and PFOA are "likely to be carcinogenic to humans," at even the smallest of concentrations. (*Id.* ¶¶ 29-34). The EPA, in addition to setting the maximum containment levels ("MCLs") of PFOA and PFOS at 4.0 parts per trillion on April 10, 2024, also designated PFOA and PFOS under CERCLA Section 9601 as "hazardous substances." (*Id.* ¶¶ 24*, 35).[4] This designation was made because EPA recognized that these particular PFAS "may present a substantial danger to the public health or welfare or the environment when released." (*Id.* ¶ 35).

<u>Moving Defendants' Operations, Alleged Uses of Hazardous Substances, and Proximity to Plaintiff's Water Supply</u>

Plaintiff alleges that each of the Moving Defendants' facilities are "located within the source water protection area" for Plaintiff's Water Supply, have designated uses of PFAS and/or have been recognized by the EPA as "entities that have a high risk for the use of PFAS," and aver that "PFAS released from them migrated [through a variety of potential migration pathways, including soil, water, air, and discharges via surface water] to the Hackensack River and to Plaintiff's Water Source." (*Id.* ¶¶ 47-53).

[4] Plaintiff includes two paragraphs in the TAC as "24." (*See* TAC at 6 and 9). The paragraph "24" to which the Court refers here is the one located on page 9 of the TAC, and is designated as "24*".

Plaintiff's specific allegations as to each of the Moving Defendants detail similar narratives as those set forth above, as follows.

*PDI Defendants*

PDI Defendants are producers of wet sanitizing wipes and other disposable healthcare supplies, with facilities located in Orangeburg and West Nyack, New York, set within Plaintiff's alleged "source water protection area." (*Id.* ¶¶ 59-61, 65, 73). Plaintiff alleges, upon information and belief, that PDI Defendants utilized materials containing PFAS, including PFOA and PFOS. (*Id.* ¶¶ 62-64, 70). Plaintiff further claims that PFAS "used in the batch mixing process have been emitted from the PDI facility . . . and migrated to the Village's water supply via air deposition" through PDI Defendants' "thirteen (13) emission points," through which NYSDEC issued them air permits. (*Id.*). Plaintiff alleges that PDI Defendants have a history of health violations at their facilities. (*Id.* ¶¶ 71-72).

*CH Defendants*

Safety-Kleen is a Wisconsin-based corporation historically doing business in New York, operating as a large hazardous and non-hazardous waste management company "perform[ing] a variety of waste disposal and cleaning services for industrial and commercial clients." (*Id.* ¶¶ 90, 94). Clean Harbors, in December 2012, purchased Safety-Kleen after it had filed for bankruptcy protection, and acquired its liabilities, actions, omissions, and operations stemming from its operations at facilities located within Plaintiff's source water protection area. (*Id.* ¶¶ 90, 107-109). Safety-Kleen, from approximately 1970 to 1995, operated a storage facility in Congers, New York, and since 1995, has operated a facility in West Nyack, New York, both of which "lie within the source water protection area for the Lake DeForest Reservoir." (*Id.* ¶¶ 92-93, 111-112). The West Nyack facility, specifically, is located "approximately 600 feet upgradient, and uphill, from the

Hackensack River, and approximately one-half mile from the intake for Plaintiff's Water Source." (*Id.* ¶¶ 112-113).

Safety-Kleen is designated by the EPA as "being at an elevated risk of PFAS manufacture, use, storage, or treatment based on state and federal guidance documents." (*Id.* ¶ 91). According to Plaintiff, Safety-Kleen has a "poor environmental track record," demonstrated by its significant enforcement and compliance issues spanning "multiple decades," and with spills and releases resulting from "human error," "equipment failure," "tank overfills," and "tank test failure[s]." (*Id.* ¶¶ 99-106). Plaintiff alleges that "[a]t all relevant times, Safety-Kleen has handled materials contaminated with PFAS, including PFOS, PFOA, and PFHxS," and thus PFAS are "present in the waste streams from all the[] industries" from which Safety-Kleen contracts, collects, disposes, and recycles. (*Id.* ¶¶ 96-98). Plaintiff alleges that all surface runoff and groundwater from the Safety-Kleen facility, "contaminated with PFAS," migrates to the Hackensack River and Plaintiff's Water Supply due to Safety-Kleen's "tortious actions, conduct, and omissions in the operations of its facilities." (*Id.* ¶ 113).

*Chartwell*

Chartwell is a New York-based pharmaceutical company that has operated a facility in Congers, New York since at least 2001. (*Id.* ¶¶ 150-151). Plaintiff alleges that Chartwell utilizes PFAS in its production and manufacture of certain pharmaceuticals and has patents for such substances that include "polytrifluoroethylene" ("PTFE"), which is commonly known as polytetrafluoroethylene, aka "Teflon," a widely known brand name PFAS. (*Id.* ¶¶ 153-157).

Plaintiff alleges that Chartwell has released various condensate and cement substances that may have contained PFAS, and upon entering the "municipal sewer system," migrated beyond the Chartwell facility and to the Hackensack River and Plaintiff's Water Supply. (*Id.* ¶¶ 158, 161).

Plaintiff also alleges that Chartwell contributed to the PFAS contamination of its water supply due to "air deposition of PFAS-containing particulates or chemicals," as Chartwell maintained an "air emissions permit" at its Congers facility between 2001 and 2023. (*Id.* ¶¶ 160-161).

*Cerovene*

Cerovene is a Delaware pharmaceutical corporation with an operating facility in Valley Cottage, New York, within Plaintiff's source water protection area. (*Id.* ¶¶ 162-164, 169). Cerovene's facility is located "150 feet from the East Branch of the Hackensack River, which discharges into Lake DeForest Reservoir," and upon information and belief, Plaintiff alleges that Cerovene used PFAS at this facility as they are "widely used in laboratory and manufacturing equipment in the pharmaceutical industry," and can be found in "certain drug formulations." (*Id.* ¶¶ 164-165, 169). Cerovene is a Resource Conservation and Recovery Act ("RCRA") small quantity generator of "ignitable waste and F003 and F005 spent nonhalogenated solvents," which "can include chlorinated fluorocarbons." (*Id.* ¶ 166). Plaintiff alleges that Cerovene demonstrated "poor housekeeping" at its facility after it received a "final order" from the EPA after "failing to notify before transporting hazardous waste," and upon information and belief, "PFAS entered the East Branch of the Hackensack River via surface water runoff and other means." (*Id.* ¶¶ 167-169).

*Nice-Pak*

Nice-Pak, a corporation with principal place of business in New York, is a producer of wet wipes and other consumer products, and operates facilities in West Nyack and Orangeburg, New York. (*Id.* ¶¶ 74-76). Plaintiff alleges that Nice-Pak, upon information and belief, utilizes materials in their manufacture and distribution of wet wipes that include PFAS, such as PFOA and PFOS. (*Id.* ¶¶ 77-79). Nice-Pak's facilities are located within Plaintiff's source water protection area and

Plaintiffs allege, upon information and belief, that Nice-Pak released PFAS that "migrated to the Hackensack River and to Plaintiff's Water Source." (*Id.* ¶ 80).

*Intercos*

Intercos is a Delaware corporation registered to do business in New York, and operates primarily as a developer and manufacturer of "cosmetics, skincare, and personal care products for various beauty brands," which historically contain or utilize PFAS. (*Id.* ¶¶ 137-138). Intercos operates production facilities in Congers and West Nyack, New York, and maintains approximately fifteen patents for products that "either contain PFAS or are produced using PFAS compounds." (*Id.* ¶¶ 138-140, 144-146). Intercos is a RCRA small quantity generator of hazardous waste and has incurred violations resulting in formal enforcement actions between 2003 and 2014. (*Id.* ¶¶ 140-141). Certain of these violations were issued as a result of chemical accidents and releases. (*Id.* ¶¶ 142-143). Additionally, Intercos discharges wastewater from its Congers facility under a SPDES permit to an "unnamed tributary of Swartout Lake," which has a "direct surface water connection to the Lake DeForest Reservoir," the source of Plaintiff's drinking water. (*Id.* ¶ 147). As a result of the above, Plaintiff alleges, upon information and belief, that Intercos has used PFAS at both of its facilities, and "as a direct and proximate result of Intercos's tortious actions, conduct, and omissions in the operation of its facility[,] PFAS released from them" and "have migrated via wastewater and groundwater to the Hackensack River and to Plaintiff's Water Source." (*Id.* ¶¶ 14-149).

*Plastic-Craft*

Plastic-Craft is a New York corporation that designs, fabricates, and assembles plastic, operating out of a facility in West Nyack, New York. (*Id.* ¶¶ 181-182). Plaintiff alleges that PFAS are customarily utilized in plastic fabrication, Plastic-Craft has historically licensed and purchased

materials containing PFAS, and Plastic-Craft is denoted by the EPA as "being at elevated risk of PFAS manufacture, use, storage or treatment based on state and federal guidance documents." (*Id.* ¶¶ 183, 184). Plaintiff alleges that Plastic-Craft emits particulate matter from "cutting, milling or machining plastic," all of which may contain PFAS materials, and upon information and belief, has been released from the facility through stormwater runoff, wastewater, and air emissions, to the Hackensack River and the Plaintiff's Water Supply, which lies approximately "200 feet" from Plastic-Craft's facility. (*Id.* ¶¶ 185-187).

*Tilcon*

Tilcon is a Delaware asphalt production corporation registered to do business in New York, with facilities located within Plaintiff's source water protection area in New City and West Nyack, New York. (*Id.* ¶¶ 170-172, 174-180). Tilcon's facilities include "quarries, asphalt plants, supply related building materials," and is classified by the EPA as "being at elevated risk of PFAS manufacture, use, storage or treatment based on state and federal guidance documents." (*Id.* ¶ 171). Plaintiff alleges that Tilcon produces recycled asphalt pavement, which "can be a significant source of PFAS," and PFAS are also utilized "to enhance the performance of asphalt, including adding properties for durability and water resistance." (*Id.* ¶¶ 172-173).

Plaintiff alleges that Tilcon's facilities discharge wastewaters via SPDES permits, and which establish "direct pathways for PFAS to migrate" to Plaintiff's Water Supply. Additionally, Tilcon's facilities both have reported multiple past spills and releases of "oils, lubricants, petroleum, and runoff," and received notices of violations therefrom. (*Id.* ¶¶ 175-178). Plaintiff alleges that "PFAS migrated beyond the Tilcon's [New City] Facility property through discharge to surface waters and via stormwater runoff," and PFAS impacts were identified within Plaintiff's Water Supply as a result of "air deposition of PFAS-containing particulates or chemicals"

discharged from Tilcon's West Nyack facility. (*Id.*). Ultimately, Plaintiff alleges, upon information and belief, that Tilcon utilized PFAS at its facilities, the facilities were located within the source water protection area for Plaintiff's drinking water, and "as a direct and proximate result of Tilcon's tortious actions, conduct, and omissions in the operation of its facility PFAS released . . . [and] migrated to the Hackensack River and to Plaintiff's Water Source." (*Id.* ¶ 180).

Plaintiff's Damages and Costs Incurred

Plaintiff, upon identifying the contamination in its drinking water supply, began planning to remediate the contamination through the design and implementation of a water treatment system that would remove PFAS contamination from the water supply. (*Id.* ¶ 44). Plaintiff claims that it has incurred and will continue to incur investigation, monitoring, planning, design and installation, treatment, and operating and maintenance costs as a result of the Moving Defendants' PFAS contamination. (*Id.* ¶¶ 45, 48). Plaintiff alleges that it has provided its initial designs of the water treatment system to the New York State Department of Health ("NYSDOH")—the NYSDOH has allegedly approved the design, and Plaintiff is waiting for final approval before commencing construction of the water treatment system in full. (*Id.* ¶ 44).

This litigation followed.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Plaintiff presses all claims for relief against each of the Moving Defendants. (TAC at 38-48). Moving Defendants move to dismiss the TAC in its entirety as against them, on the merits. The Court considers Moving Defendants' arguments as to each claim, *seriatim*.

### I. Federal Statutory Claims for Relief: CERCLA §§ 107(a) and 113(g)(2) (Claims I and II)

Plaintiffs' first and second claims for relief are brought pursuant to CERCLA against Moving Defendants under the following provisions: i) cost recovery liability under Section 107(a), 42 U.S.C. § 9607(a) (Claim I); and ii) declaratory judgment under Sections 107(a) and 113(g)(2), 42 U.S.C. § 9607(a) and 9613(g)(2) (Claim II). (TAC at 38-41).

CERCLA was enacted to "assure that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions," and under this remedial

statute, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." *See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010). The primary purposes of CERCLA, therefore, are to: "(1) encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 673-74 (S.D.N.Y. 2015). CERCLA, as a remedial statute, must be construed "liberally" in order to effectuate these twin goals. *New York v. Next Millenium Realty, LLC*, 732 F.3d 117, 124 (2d Cir. 2013).

Plaintiff's first claim against Moving Defendants under Section 107(a) of CERCLA, "authorizes the United States, a state, or 'any other person' to seek reimbursement for all removal or remedial costs associated with the hazardous materials on the property, provided that those actions are consistent with the National Contingency Plan—the federal government's roadmap for responding to the release of hazardous substances." *Niagara Mohawk*, 596 F.3d at 120-21 (citing 42 U.S.C. § 9607(a)(4)). Thus, to properly plead a *prima facie* cause of action under CERCLA Section 107(a), a Plaintiff must show that: "(1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan." *Town of Hempstead v. United States*, 776 F. Supp. 3d 1, 10 (E.D.N.Y. 2025) (quoting *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992)).

Moving Defendants argue only that Plaintiff fails to plausibly allege facts supporting the third factor, *i.e.* that there was a "release or threatened release of hazardous substances at the

facilit[ies]." (*See* Def. Br. at 5-17).[5] CERCLA defines "release" as any "spilling, leaking, pumping, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)," and, relevant here, "hazardous substance" as "any element, compound, mixture, solution, or substance designated pursuant to [CERCLA] Section 9602." 42 U.S.C. § 9601 (14), (22).

Plaintiff's allegations, read as a whole, at this stage and taking them as true for purposes of this motion, give Moving Defendants "fair notice of what the claim is and the grounds upon which it rests," and therefore adequately plead a claim under CERCLA § 107(a). *See Town of Clarkstown*, 95 F. Supp. 3d at 681. According to the TAC: PFOA and PFOS, chemicals identified as PFAS are, as of July 9, 2024, categorized as "hazardous substance[s]" under CERCLA § 9601 *et seq.*, as they "may present a substantial danger to the public health or welfare or the environment when released" (*id.* ¶¶ 22-35); Plaintiff detected levels elevated above EPA's MCL of 4.0 parts per trillion of certain PFAS, including PFOA, PFOS, PFHpA, and PFHxA, in its drinking water supply (*id.* ¶¶ 37-43); "Defendants' businesses and/or properties are located within the source water protection area for Plaintiff's drinking water source[,] . . . used materials containing PFAS [including PFOA, PFOS, PFHpA, and PFHxA] in their business operations, and used, released, stored, handled and/or disposed of PFAS and PFAS-containing materials in such a manner that has caused PFAS [including PFOA, PFOS, PFHpA, and PFHxA] to migrate into and exist in

[5] As Moving Defendants do not appear to contest that they are considered "facilit[ies]" under CERCLA, the Court focuses its analysis only as to whether Plaintiff plausibly alleged a "release" of "hazardous substances" sufficient at this stage to survive Moving Defendants' motion. Moving Defendants never otherwise explicitly reference the factors required for a *prima facie* cause of action under CERCLA § 107(a). Additionally, as Plaintiff notes, and as the Court details more fully *infra*, Moving Defendants improperly impute tort-based products liability standards to Plaintiff's statutory CERCLA claims and rely almost exclusively upon case law inapposite as a result. (*Compare* Def. Br. at 6-17 *with* Pl. Br. at 6-21).

Plaintiff's drinking water" (*id.* ¶¶ 9, 53, 62-73 (PDI Defendants), 77-80 (Nice-Pak), 91-120 (CH Defendants), 145-149 (Intercos), 155-161 (Chartwell), 164-169 (Cerovene), 171-180 (Tilcon), 183-187 (Plastic-Craft)); and Plaintiff has incurred damages caused by the above-stated contamination, consisting of various investigation, testing, and planning costs, including costs for design and installation of the water treatment system, construction, operation, infrastructure, and maintenance thereof, "all of which are, and will be, consistent with the national contingency plan" (*id.* ¶¶ 45, 53-55, 189-201).

Moving Defendants first take issue with the manner in which Plaintiff pleads the above allegations, in short, arguing that Plaintiff's "generic," "generalized," and "industry-wide" assertions, and statements made "upon information and belief," as to the specific chemicals released, the nature or existence of the releases, and migration pathways, are insufficient to survive this motion. (Def. Br. at 5-15; *see also, generally*, CH Defs. Decl., Nice-Pak Decl., Chartwell Decl., Tilcon Decl., Intercos Decl., Cerovene Decl., Plastic-Craft Decl., PDI Defs. Decl.). However, Plaintiff is "not required to plead specific evidence or extra facts beyond what is needed to make the claim plausible." *See Town of Clarkstown*, 95 F. Supp. 3d at 681-82. The Court finds that at this stage, Plaintiff's allegations that the umbrella chemical group, "PFAS," were utilized and released, or at the very least were "threatened [to be] release[d]," by the Moving Defendants in Plaintiff's source water protection area and in Plaintiff's drinking water, are more than sufficient to demonstrate a plausible "inference" that the specific "hazardous substances," PFOA and PFOS, were utilized by Moving Defendants and resulted in violations of CERCLA § 107 (a). The allegations also sufficiently place Moving Defendants on notice of Plaintiff's claims at this stage. *Id.* at 681-82 ("[E]ven though the [pleading] states that each Movants' waste streams 'likely' contained certain hazardous substances, the Court is mindful that 'the available evidence of who

did what at the relevant site[s] is often dependent on inference,' and accordingly, 'there is nothing objectionable in basing findings solely on circumstantial evidence[.]'"); *see also Village of Endicott v. Int'l Bus. Mach. Corp.*, No. 24-CV-09242, 2026 WL 1243959, at *10 (S.D.N.Y. May 6, 2026) (holding that plaintiff plausibly alleged a CERCLA Section 107(a) claim where, *inter alia*, "[t]he [Plaintiff] . . . allege[d] that IBM used PFAS in its chip-making processes at the Campus," and the same PFAS "hazardous substances" were detected in the sensitive water source); *Solvent Chemical Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 208-09 (W.D.N.Y. 2002) (holding allegations sufficient to state a CERCLA claim where "plaintiffs alleged that there was a release or threatened release of hazardous substances . . . , that those substances have come to be located on the Solvent Site and the Olin Hot Spot, and that Solvent has incurred response costs"); *Fitzgibbons v. City of Oswego*, No. 10-CV-01038, 2011 WL 6218208, at *9 (W.D.N.Y. Dec. 13, 2011) (declining to dismiss plaintiff's CERCLA Section 107 claim at the motion to dismiss stage, allowing plaintiff "the opportunity to discover the potential presence of 'hazardous substances' within the [waste at issue]," as "what [the] material actually consists of and whether or not it constitutes a hazardous substance involves questions of fact that cannot be decided at this early stage of proceedings").

While certain of Plaintiff's allegations are made "upon information and belief," these allegations are permissible and can be relied upon by the Court at the motion to dismiss stage, since this is an instance where the facts pled, *e.g.*, the Moving Defendants' respective particular chemicals utilized (*see* Pl. Br. at 15-15, 18-19), are "peculiarly within the possession and control" of the Moving Defendants. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

Moving Defendants' reliance upon consumer products liability and tort-based case law to defeat a CERCLA claim is unpersuasive. CERCLA operates under an entirely separate

environmental statutory scheme, enacted with a "relaxed liability standard," in order to effectuate Congress' remedial goals of "reach[ing] as far back into the past as necessary to identify both the hazardous wastes present at a site and those responsible for them under the statute." *Niagara Mohawk Power Corp.*, 596 F.3d at 130. In any event, the single in-circuit CERCLA case Moving Defendants cite in this section, *Barnes Landfill, Inc. v. Town of Highland*, 802 F. Supp. 1087, 1088 (S.D.N.Y. 1992), is equally unhelpful, as there, the Court held the allegations were insufficient to state a Section 107 claim because Plaintiff's "allegations refer[red] only to 'hazardous substances' without in any instance naming what those substances are or might be." Here, as detailed *supra*, Plaintiff has done significantly more, and therefore satisfies the requisite pleading standard.

Finally, Moving Defendants attempt to impute a "substantial factor" causation test to Plaintiff's CERCLA claim, improperly relying again upon consumer products liability and tort-based caselaw for this argument. (Def. Br. at 16-17). However, at this stage, and as clarified by the Second Circuit, "[t]he traditional tort concept of causation plays little or no role in the liability scheme," as "in addition to imposing a strict liability scheme, CERCLA does away with a causation requirement." *See U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2d Cir. 1993); *see also Niagara Mohawk*, 596 F.3d at 131; *Solvent Chemical Co.*, 242 F. Supp. 2d at 208 ("[w]hat is not required is that the plaintiff show that a specific defendant's waste caused incurrence of clean-up costs" (quoting *Alcan Aluminum*, 990 F.2d at 721)).[6]

[6] The Court acknowledges Moving Defendants' argument that the circumstances present here may demonstrate a "two-site" CERCLA case, which according to Moving Defendants, requires more to be pled as to causation. (Def. Br. at 17; Reply at 10-11). However, the in-circuit cases Moving Defendants rely upon for this premise, *New York v. Adamowicz*, 16 F. Supp. 3d 123, 140 (E.D.N.Y. 2014) and *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 175, 186 (D. Conn. 2009), are distinguishable, as they were both decided at advanced procedural stages, namely, at trial and summary judgment, respectively. The Court declines to engage in any further causation analysis as to Plaintiff's CERCLA claims at this stage. In any event, as detailed *infra*, Plaintiff's allegations are sufficient to state a claim for its tort-based state law claims, which include a similar causation analysis, one that is "generally a question for the finder of fact." *Locust Valley Water Dist. v. Dow Chem. Co.*, 465 F. Supp. 3d 235, 240 (E.D.N.Y. 2020).

Because Plaintiff's allegations sufficiently transformed its CERCLA cost recovery claim "from conceivable to plausible," *Twombly*, 550 U.S. at 570, the first claim for relief under CERCLA remains as pled against all Moving Defendants. Additionally, as Plaintiffs have, at this stage, sufficiently stated a Section 107(a) claim for relief, Plaintiffs' claim for declaratory judgment under Section 113(g)(2) similarly survives Moving Defendants' motion to dismiss. *Town of Hempstead v. United States*, No. 16-CV-03652, 2017 WL 11699273, at *14 (E.D.N.Y. Sept. 18, 2017) ("in light of the fact that [plaintiff] may have a viable Section 107 claim, its cause of action for declaratory judgment survives defendants' motion to dismiss).

Accordingly, Moving Defendants' motion to dismiss as to Claims I and II is denied.

II. New York State Law Tort-Based Claims for Relief

A. Continuing Public Nuisance (Claim III)

Moving Defendants argue that Plaintiff's allegations concerning public nuisance fail as pled, as Plaintiff "has not plausibly alleged that conduct by any of the Moving Defendants was a substantial factor in causing the PFAS present in the Village's drinking water." (Def. Br. at 18-20; Reply at 11). The Court disagrees.

To state a claim for public nuisance, Plaintiff "must show that the defendant[s'] conduct 'amounts to a substantial interference with the exercise of a common right of the public,' thereby 'endangering or injuring the property, health, safety or comfort of a considerable number of persons.'" *City of New York v. Magellan Technology, Inc.*, 735 F. Supp. 3d 312, 328 (S.D.N.Y. 2024) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013)). As is relevant here, "'the release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right,' thus making such a release 'a public

nuisance as a matter of New York law.'" *New York v. West Side Corp.*, 790 F. Supp. 2d 13, 29 (E.D.N.Y. 2011) (quoting *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1985)).

Accordingly, and in light of the allegations detailed above as to Plaintiff's CERCLA claims, Plaintiff has plausibly established, at this stage, a public nuisance claim stemming from allegations of Moving Defendants' release or threatened release of PFAS or PFAS-containing materials contributing to the contamination of Plaintiff's drinking water source. (*See supra* at 12-17). Moving Defendants' arguments concerning "substantial interference" and "substantial factor" causation do not hold water, at least at this procedural stage, as it is well-settled that "causation is generally a question of fact for the jury," and Plaintiff has sufficiently pled enough to conclude that each of the Moving Defendants' contributions were "more than trivial." *See SUEZ Water New York Inc. v. E.I. du Pont de Nemours and Co.*, No. 20-CV-10731, 2023 WL 2601161, at *6 (S.D.N.Y. Mar. 22, 2023); *see also Seggos v. Datre*, No. 17-CV-02684, 2024 WL 4120401, at *5 (E.D.N.Y. Jul. 18, 2024), *adopted by* 2024 WL 3823493 (S.D.N.Y. Aug. 14, 2024).

Moving Defendants' motion is denied as to Plaintiff's continuing public nuisance claim, as "[a]t this stage in the litigation, the [Plaintiff] is not required to prove its case, but simply to state a plausible claim for relief." *Town of Hempstead*, 2017 WL 11699273, at *22.

B. <u>Continuing Trespass (Claim IV)</u>

Moving Defendants argue that Plaintiff fails to sufficiently plead the "intent" element of a common law trespass claim, asserting that Plaintiff "has not made any allegation of intentional acts by the Moving Defendants that would have caused the PFAS detected in its drinking water." (Def. Br. at 20-21; Reply at 12). Trespass is the "intentional invasion of another's property," and Plaintiff, to properly state a trespass claim, must plead that the alleged trespasser "(1) intend[ed] the act which amounts to or produces the unlawful invasion, and (2) the intrusion must be the

immediate or inevitable consequence of that act." *Fitzgibbons*, 2011 WL 6218208, at *15 (citing *Phillips v. Sun Oil Co.*, 307 N.Y.328, 331 (1954)). Importantly, the trespasser "need not intend or expect the damaging consequence of [the] intrusion." *Phillips*, 307 N.Y. at 331.

Plaintiff's allegations concerning the relative locations of Moving Defendants' alleged activities and Plaintiff's sensitive drinking water area, and the nature of the activities in the context and use of PFAS-containing materials, including general allegations of violative operations at Moving Defendants' facilities, are sufficient, at this procedural stage, to plausibly infer that Moving Defendants had "such reason to know or expect that [their] contamination . . . could affect [Plaintiff's drinking water source]." *See Town of Hempstead*, 2017 WL 11699273, at *23 n.28 (considering the early stage procedural posture the Court could not "conclude as a matter of law . . . that the sites were 'operated as properly as such facilities could be,' or that the channels of the subterranean streams were unknown,'" and in light of the "plaintiff's allegations as to the location of the Town's wells vis-à-vis the defendants' alleged activities and the nature of those activities," the Court found "that the Town ha[d] plausibly alleged that defendants did have such reason to know or expect that contamination of their land could affect the Town's wells").

Plaintiff's allegations are thus sufficient to survive Moving Defendants' motion to dismiss on its continuing trespass claim.

C. Negligence (Claim V)

Under New York law, to state a negligence claim, a plaintiff must allege, "the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party." *Becker v. Schwartz*, 46 386 N.E.2d 807, 811 (N.Y. 1978). Courts in this circuit, in the context of groundwater contamination, have held that there exists a "duty not to pollute a plaintiff's drinking water." *See SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 578

F. Supp. 3d 511, 554 (S.D.N.Y. 2022) (quoting *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 245 (N.D.N.Y. 2017)) ("Society has a reasonable expectation that manufacturers avoid contaminating the surrounding environment, an expectation that extends to the pollution of an area's water supply.").

Moving Defendants, in the instant case, argue that Plaintiff's negligence claim fails because Plaintiff's allegations "fail[] to plausibly allege that Moving Defendants knew or should have known the Village would suffer an injury under not-yet-enacted EPA regulations and not-yet-existent scientific understanding" (Def. Br. at 21; Reply at 12-13), effectively imputing a summary judgment standard to a motion to dismiss. *See In re MTBE*, 725 F.3d 65, 118-19 (2d Cir. 2013) (holding that during trial "[e]vidence of Exxon's timely knowledge of the particular dangers, of MTBE, combined with evidence about remedial measures available as early as the 1980s was sufficient to allow the jury to determine that Exxon breached the standard of ordinary care"). When and to what extent the Moving Defendants exactly knew about the alleged dangers of PFAS is not at issue on this motion—all Plaintiff must demonstrate is *plausibility* as to the "familiar elements of negligence," which at this stage, Plaintiff has sufficiently demonstrated. (*See, e.g.*, TAC ¶¶ 233-245).

Therefore, viewing these facts in the light most favorable to Plaintiff, the Third Amended Complaint plausibly states a negligence claim as to each Moving Defendant.

D. <u>Failure to Warn (Claim VI)</u>

Plaintiff pursues a "failure to warn" claim, including nearly identical allegations to its negligence claim. (*Compare* TAC ¶¶ 233-245 ("Defendants owed Plaintiff a duty to act as reasonable operators and/or owners of property and to take all necessary steps to prevent the continuing and future release of PFAS from their facilities and/or properties," and "breached the

above duties and failed to prevent the releases of PFAS containing products at their properties," resulting in Plaintiff expending "significant resources to test, monitor and remediate the effects of Defendants' contamination for many years into the future") *with* ¶¶ 247-252 ("Defendants owed Plaintiff a duty to timely notify and warn Plaintiff of the releases," and "breached that duty by failing to timely notify and warn Plaintiff of the releases of hazardous substances, including but not limited to PFAS," resulting in Plaintiff expending "significant resources to test, monitor and remediate the effects of Defendants' negligence for many years into the future")).

Accordingly, as Plaintiff's failure to warn claim "is premised on the same facts" as its negligence claim, and Moving Defendants move to dismiss for substantially the same reasons described in the negligence section, Plaintiff's failure to warn claim, at this stage, survives dismissal. *See Lucey v. Saint-Gobain Performance Plastics Corp.*, No. 17-CV-01054, 2018 WL 2926289, at *19 (N.D.N.Y. June 11, 2018) (declining to dismiss Plaintiff's failure to warn claim as "functionally synonymous" to its negligence claim).

Moving Defendants' motion, as to Claim VI, is likewise denied.

**CONCLUSION**

For the reasons outlined above, Moving Defendants' motion to dismiss is DENIED. To be clear, while Plaintiff has plausibly alleged claims for relief as indicated, the Court is mindful that Plaintiff will now have to establish, by admissible proof, the evidence to sustain these claims, or any of them. Plaintiff's request for "leave to amend," made improperly in its opposition, is denied as unnecessary in light of the Court's rulings herein.[7]

[7] In any event, Plaintiff has already amended the pleading thrice—allowing another amendment, at this stage, constituting what would be a *fourth* bite at the apple, would "indulge Plaintiff's attempts at piecemeal pleading . . . while inflicting significant prejudice" on Moving Defendants, an indulgence in which this Court refuses to partake. *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-CV-06566, 2019 WL 8165893, at *5 (S.D.N.Y. Oct. 9, 2019); *see also Protex Industrial (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 256 (S.D.N.Y. 2024).

Moving Defendants are directed to file Answers to the TAC within 14 days of the issuance of this Opinion & Order. The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Docs. 179 and 189.

**SO ORDERED:**

Dated: White Plains, New York
September 11, 2026

PHILIP M. HALPERN
United States District Judge